

UNITED STATES DISTRICT COURT
DISTRICT OF MARYLAND

Chambers of                                                          101 West Lombard Street
J. Mark Coulson                                       Baltimore, Maryland 21201
U.S. Magistrate Judge                      MDD_JMCChambers@mdd.uscourts.gov
                                                                      Phone: (410) 962-4953
                                                                          Fax: (410) 962-2985

June 7, 2017

LETTER TO ALL COUNSEL OF RECORD

Re: <u>Iris N. Carter v. Commissioner, Social Security Administration</u>
    Civil No. 16-00473-JMC

Dear Counsel:

On February 19, 2016, Plaintiff, Ms. Iris N. Carter, petitioned this Court to review the Social Security Administration's final decision to deny her claim for Title XVI Social Security Income ("SSI") benefits. (ECF No. 1). I have considered the parties' cross-motions for summary judgment (ECF Nos. 17, 20), as well as Ms. Carter's response (ECF No. 21), and I find that no hearing is necessary. Loc. R. 105.6 (D. Md. 2016). This Court must uphold the decision of the Agency if it is supported by substantial evidence and if the Agency employed proper legal standards. 42 U.S.C. § 405(g); <u>Craig v. Chater</u>, 76 F.3d 585, 589 (4th Cir. 1996). Because I find it necessary to clarify part of the ALJ's decision, I will deny both motions, reverse the judgment of the Commissioner, and remand the case to the Commissioner for further analysis pursuant to sentence four of 42 U.S.C. § 405(g). This letter explains my rationale.

Ms. Carter initially applied for SSI benefits on June 2, 2008, alleging disability as of January 31, 2006. (Tr. 469-471). That claim was initially denied on September 4, 2008, and then, upon reconsideration, it was denied again on December 3, 2008. (Tr. 116-118, 153-158). Ms. Carter requested a hearing before an Administrative Law Judge ("ALJ"), and on December 7, 2010, a hearing was held before ALJ Raymond Faby. (Tr. 120-147). Following that hearing, in September 2012, the Appeals Council reviewed Ms. Carter's claim and remanded the case. (Tr. 148-152). Thereafter, in August 2014, a second hearing was held before ALJ Pamela Crawford. Following that hearing, the ALJ issued a

written opinion in which she concluded that Ms. Carter was not disabled within the meaning of the Social Security Act during the relevant time frame. (Tr. 41-102, 12-40). The Appeals Council would later deny Ms. Carter's request for review, making ALJ Crawford's decision the final reviewable decision of the Agency. (Tr. 1-5).

In making her decision on Ms. Carter's claim, the ALJ followed the five-step sequential evaluation of disability set forth in the Secretary's regulations. 20 C.F.R. § 416.920 (1992). Pursuant to those regulations, the "ALJ must consider whether a claimant (1) is working, (2) has a severe impairment, (3) has an impairment that meets or equals the requirements of a listed impairment, (4) can return to [her] past work, and (5) if not, whether [she] can perform other work." <u>Hunter v. Sullivan</u>, 993 F.2d 31, 34–35 (4th Cir. 1992) (internal citations omitted). "Through the fourth step, the burden of production and proof is on the claimant." <u>Id</u>. (internal citations omitted). If, however, the claimant reaches step five, then "the burden shifts to the Secretary to produce evidence that other jobs exist in the national economy that the claimant can perform considering his age, education, and work experience." <u>Id</u>. (internal citations omitted).

In this case, the ALJ, at step one, found that Ms. Carter had not engaged in "substantial gainful activity" since June 2, 2008, the date of her application. (Tr. 18). Next, at step two, the ALJ determined that Ms. Carter's "borderline intellectual functioning" and "depression" constituted "severe impairments" under the relevant regulations. (Tr. 18-19). At this step, the ALJ also discussed Ms. Carter's "fibromyalgia, migraines, degenerative joint disease, and substance (marijuana) abuse," but found that those "impairments cause [Ms. Carter] no more than minimal limitations in functioning and [were], therefore, considered non-severe." (Tr. 19). Then, at step three, the ALJ found that Mr. Carter did not have an impairment, or a combination of impairments, that met or medically equaled any of the impairments listed set forth in 20 C.F.R Part 404, Subpart P, Appendix 1. (Tr. 20).

Before step four of the sequential evaluation, the ALJ found that Ms. Cater had the residual functional capacity (RFC) to "perform a full range of work at all exertional levels but with the following nonexertional limitations: work limited to simple, routine, repetitive tasks." (Tr. 22). Then, at step four, the ALJ found that Ms. Carter "has no past relevant work." (Tr. 29).

Finally, at step five, the ALJ determined that given Ms. Carter's age, education, work experience and RFC, she could perform "jobs that exist[ed] in significant numbers in the national economy." (Tr. 30). Therefore, the ALJ concluded that Ms. Carter "has not been under a disability, as defined in the Social Security Act, since June 2, 2008, the date the application was filed." (Tr. 30-31).

On appeal, Ms. Carter contends ALJ's decision erred in three ways: first, the ALJ failed to comply with the Fourth Circuit's decision in <u>Mascio v. Colvin</u>, 780 F.3d 632 (4th Cir. 2015); second, the ALJ failed to consider her fibromyalgia pursuant to SSR 12-2p; and third, the ALJ failed to properly evaluate whether her impairments met or medically equaled Listing 12.05C. Because Ms. Carter's

first argument merits a remand, I will not fully address the concerns set forth in her second argument about the ALJ's consideration of her Fibromyalgia, though I will affirm the ALJ's decision regarding Ms. Carter's third claim relating to Listing 12.05. In so holding, however, the Court emphasizes that it expresses no opinion or judgment as to the ALJ's ultimate decision regarding disability.

As mentioned above, I must uphold the ALJ's findings if they are supported by substantial evidence and were reached through correct legal standards. Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012). "Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It consists of more than a mere scintilla of evidence but may be less than a preponderance." Id. (internal citations and quotations omitted). And in accordance with this standard, "[I] do not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [my] judgment for that of the ALJ. Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Id.

Mascio

Ms. Carter's first argument concerns the ALJ's evaluation of the severity of her mental impairments and the corresponding RFC assessment. Ms. Carter argues that, in arriving at the RFC assessment, the "ALJ identified the existence of impairments supportive of moderate limitations in concentration, persistence, and pace," yet, the ALJ "merely limited [her] to simple, routine, repetitive tasks due to such moderate limitations." Invoking the Fourth Circuit's decision in Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015), Ms. Carter claims that the case should be remanded so that the ALJ can indicate why her moderate limitation in concentration, persistence, and pace did not translate into a different limitation in her RFC assessment.

In Mascio, the Fourth Circuit held that a remand was necessary where the hypothetical the ALJ posed to the vocational expert and the corresponding RFC assessment failed to include any mental limitations other than unskilled work, despite the fact that, at step three of the sequential evaluation, the ALJ determined that the claimant had moderate difficulties in maintaining concentration, persistence, or pace. 780 F.3d at 637-38. In so holding, the Fourth Circuit agreed with other federal circuit courts that an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by merely restricting the hypothetical question to simple, routine tasks or unskilled work. Id. at 638. Nonetheless, the Fourth Circuit noted that the failure to include additional limitations might not constitute error if the ALJ is able to offer an explanation as to why the claimant's moderate difficulties in concentration, persistence, or pace did not translate into a limitation in the claimant's RFC. Id. Simply put, the Court in Mascio held that where an ALJ finds moderate difficulties at steps two or three of the sequential evaluation, then he or she is required to either include the appropriate limitations in the RFC that would account for such difficulties, or to explain why no such limitations are necessary.

In this case, the ALJ assessed Ms. Carter's mental impairments pursuant to the "special mental technique," and found that she had "moderate limitations in concentration, persistence, and pace." (Tr. 21). The ALJ's complete assessment was as follows:

> With regard to concentration, persistence or pace, the claimant has moderate difficulties. In claimant's June 2008 function report, the claimant stated she has trouble with her memory and concertation. However, she admitted she can follow spoken instructions if repeated. She also stated she has no problem paying bills, counting change, or handling a savings account, though she testified at her hearing that her oldest son Tyree now handles those tasks for her. (Exhibit 5F and Hearing Testimony). Dr. Celozzi, psychological consultative examiner, stated in August 2008 that, despite her border-line range IQ scores, the claimant was able to understand, remember, and follow simple instructions and is capable of handling her own financial affairs. (Exhibit 6F/2, 6) Accordingly, I find that the claimant has moderate impairment in areas of concentration, persistence, and pace, consistent with the opinions of the State Agency psychological consultants. (Exhibit 9F and 12F).

(Tr. 21). In determining Ms. Carter's RFC, the ALJ stated that she was able to "perform a full range of work at all exertional levels but with the following nonexertional limitations: <u>work limited to simple, routine, repetitive tasks</u>." (Tr. 22, 29) (emphasis added). Ms. Carter contends that the ALJ committed a similar error to that addressed in <u>Mascio</u> because "in limiting [her] to simple, routine, repetitive tasks, the ALJ failed to indicate why [her] moderate limitation in concentration, persistence, or pace at step-three did not translate into a limitation in the RFC assessment."

The Court agrees with Ms. Carter's argument. The ALJ did not adequately explain why her finding of "moderate difficulties" was not included in the RFC assessment. The Government points out, however, that the ALJ relied upon State Agency psychological consultants who noted that Ms. Carter "retains the capacity to learn and carry out simple tasks," and that the ALJ relied in part on Dr. Celozzi's opinion that Ms. Carter "was able to understand, remember, and follow simple instructions and is capable of handling her own financial affairs." (Tr. 799, 21). While it is true that the ALJ considered this evidence, it is not clear whether the ALJ was citing this evidence in support of her decision to not include such a limitation in the RFC assessment.

A similar issue was presented in <u>Geisler v. Comm'r, Soc. Sec. Admin.</u>, No. CIV. SAG-14-2857, 2015 WL 4485459 (D. Md. July 21, 2015). There, the Court decided that the error in <u>Mascio</u> was distinguishable from the facts before it "because the ALJ in this case articulated that it was precisely due to [the claimant's] diminished abilities with respect to more-than-simple instructions and more-than-routine tasks that he found moderate difficulties in concentration, persistence, or pace, and because he explicitly related his RFC limitation of simple, routine, repetitive 1 or 2 step tasks to [the claimant's] difficulties in concentration, persistence, or pace, there is no internal inconsistency in the

ALJ's decision." Id. at *5. Because I cannot say precisely why the ALJ did not include the moderate limitations into the RFC assessment, the case will be remanded so that that ambiguity may be clarified.

Additionally, the Court does not find compelling the State's alternative argument on this issue that such an error was merely harmless. The vocational expert responded to one of the ALJ's hypotheticals, in which the hypothetical-claimant suffered from a "loss of productivity of 15 to 20 percent," by stating that "[g]iven an individual that has a loss of productivity of 15 to 20 percent it's my opinion based on my experience as a vocational counselor that there would be no work for an individual in a competitive employment situation." But the vocational expert suggested that that opinion could change if the loss of productivity was different. (Tr. 96-97). As this Court has noted before, "it is reasonable to assume that . . . [a] mild limitation in maintaining concentration, persistence, or pace [can] translate into a decrease in productivity." Free v. Colvin, No. CV TMD 15-1359, 2016 WL 5661651, at *6 (D. Md. Sept. 30, 2016) (citing Sterling v. Colvin, No. 1:13-CV-01132-SEB, 2014 WL 4328682, at *2 (S.D. Ind. Aug. 29, 2014)). Therefore, the Court will remand the case so that the ALJ can provide a clarification to what extent Ms. Carter's moderate limitations in concentration, persistence, and pace affect her ability to remain productive through a work day.

<u>Fibromyalgia</u>

Also upon remand, the ALJ should consider Ms. Carter's second argument that the ALJ erred in her evaluation of Ms. Carter's fibromyalgia. By not identifying or considering SSR 12-2p, it is not clear to the Court that Ms. Carter's fibromyalgia, which the ALJ apparently found was a medically determinable impairment, was considered at later stages in the sequential evaluation, consistent with the requirements of SSR 12-2p.

<u>Listing 12.05C</u>

Lastly, Ms. Carter contends that the ALJ erred at step three of the sequential evaluation by failing to properly evaluate whether her impairments met or equaled Listing 12.05C. This Court has described that listing as follows:

> Listing 12.05, the listing for mental retardation, contains an introductory paragraph with the diagnostic description for mental retardation. It also contains four sets of criteria (paragraphs A through D). If a claimant's impairment satisfies the diagnostic description in the introductory paragraph and any one of the four sets of criteria, the Social Security Administration must find that the claimant's impairment meets Listing 12.05. The diagnostic description for Listing 12.05 states that mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence

5

> demonstrates or supports onset before age 22. Paragraph C lays out the following additional criteria: A valid verbal, performance, or full scale IQ score of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

Culotta v. Astrue, No. SAG-10-CV-3137, 2011 WL 6300585, at *6 (D. Md. Dec. 15, 2011) (internal citations, quotations, and brackets omitted).

Here, the ALJ identified Listing 12.05 and provided a thorough analysis for why the criteria of "paragraph B" and "paragraph C" were not satisfied. (Tr. 21-22). In doing so, she noted Dr. Petzelt's assessment that Ms. Carter's IQ scores in the record, while suggestive of "moderate impairment in cognitive functioning," were not "reliable enough to definitely diagnose mental retardation or to meet Listing 12.05." Further, the ALJ assigned significant weight to Dr. Petzelt's medical opinion that Ms. Carter's inconsistent statements about her education, employment history, and daily activities which "bely[] her claim of mental retardation." In light of these findings, I believe that there is substantial evidence supporting the ALJ's determination as it relates to Listing 12.05.

Ms. Carter, however, notes that the ALJ failed to identify whether she "suffered from deficits in adaptive functioning prior to age twenty-two (22)," and that such an omission requires a reversal. Even if this were true, the record still shows that Ms. Carter did not meet her burden of establishing any of the four sets of criteria.

Ms. Carter also contends that remand is necessary because the ALJ relied exclusively on the medical opinion of Dr. Petzelt, a nontreating physician, and that opinion, according to Ms. Carter, was contradicted by the entire record. See Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986) ("a non-examining physician's opinion cannot, by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by *all of the other evidence* in the record") (internal citations omitted)(emphasis in the original). The Court does not agree with Ms. Carter's characterization of the record. The ALJ relied on other considerations in the record, including Ms. Carter's attendance at school, her own reports about obtaining a GED, her ability to follow instructions and assist her children in completing homework, and the lack of any indication from a treating physician that she had a cognitive impairment. (Tr. 25, 76-77, 729, 778, 556-568). Therefore, I find that the ALJ's determination relating to Listing 12.05 to be supported by substantial evidence.

For the reasons set forth herein, the cross motions for summary judgment (ECF Nos. 17, 20) are DENIED, the Commissioner's judgment is reversed and the case is remanded in order for the ALJ to provide clarifications consistent with this opinion.

Despite the informal nature of this letter, it is an Order of the Court and the Clerk is directed to docket it as such.

Sincerely yours,

/s/

J. Mark Coulson
United States Magistrate Judge